# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SARAH A. TAPIA<br>and NINA L. WHITE O/B/O<br>DONNA A. WHITE, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV-17-1003-G |
| | ) | |
| NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Donna A. White[1] brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income ("SSI") under Title XVI of the Social Security Act, *id.* §§ 1381-1383f. Upon review of the administrative record (Doc. No. 11, hereinafter "R. _"), the supplemental administrative record (Doc. No. 24), and the arguments and authorities submitted by the parties, the Court affirms the Commissioner's decision.

---

[1] The claimant, Donna A. White, died during the pendency of this proceeding. On January 16, 2018, the Court granted the request of Donna White's counsel to substitute her adult daughters, Sarah A. Tapia and Nina L. White, as parties. *See* Order (Doc. No. 18). In this opinion, references to "Plaintiff" refer only to the claimant. References to "Ms. White" refer to Nina White.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her DIB and SSI applications on October 27, 2014.  R. 10, 222-25, 226-30.  In both applications, Plaintiff alleged a disability-onset date of July 24, 2014.  R. 10, 222, 226.  Following a denial of her applications initially and on reconsideration, a hearing was held before an administrative law judge ("ALJ") on April 29, 2016.  R. 32-54, 165-69, 170-73, 177-79.  In addition to Plaintiff, a vocational expert ("VE") testified at the hearing.  R. 49-51.  The ALJ issued an unfavorable decision on June 21, 2016.  R. 7-20.

The Commissioner of Social Security uses a five-step sequential evaluation process to determine entitlement to disability benefits.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  R. 12-13.  At step two, the ALJ determined that Plaintiff had the severe medically determinable impairments of degenerative disc disease of the cervical spine, migraines, anxiety, and depression.  R. 13.  At step three, the ALJ found that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 13-14.  The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all her medically determinable impairments.  R. 15-18.  The ALJ found that Plaintiff had the RFC to perform the full range of light work subject only to no more than occasional interaction with the general public.  R. 15.

At step four, the ALJ, relying upon the VE's testimony, found that Plaintiff could perform her past relevant work as a housekeeper.  R. 18-19, 49-50.  The ALJ then made an

alternative step-five finding, considering whether there were jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. Relying upon VE testimony, the ALJ found that there were three other light, unskilled jobs Plaintiff could perform. R. 19, 50-51. Therefore, the ALJ determined that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant period. R. 19-20.

Plaintiff's request for review by the SSA Appeals Council was denied on August 15, 2017, and the unfavorable decision of the ALJ stands as the Commissioner's final decision. R. 1-6; 20 C.F.R. §§ 404.981, 416.1481.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner

followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ISSUES ON APPEAL

In this action, Plaintiff argues that the ALJ erred by failing to properly consider certain third-party statements when assessing Plaintiff's RFC. *See* Pl.'s Br. (Doc. No. 15) at 6-10.

ANALYSIS

Plaintiff argues that the ALJ failed to properly consider the third-party statements and hearing testimony provided by Plaintiff's daughter and boyfriend. *See id.* Plaintiff cites Social Security Ruling 06-3p,[2] which provides that when considering evidence from nonmedical sources who are "other sources," such as spouses, parents, friends, and neighbors, it "would be appropriate" for adjudicators to "consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-3p, 2006 WL 2329939, at *6 (Aug. 9, 2006). Relatedly, an ALJ is required "to consider all relevant evidence" in a claimant's case record. *Id.* at *4, *6; *accord* 20 C.F.R. §§ 404.1520b(a), 416.920b(a).

Specifically, Plaintiff argues that the ALJ "completely ignored" a January 2015 third-party function report provided by Plaintiff's boyfriend, Randy Gwin, as well as

---

[2] Social Security Ruling 06-03p has been rescinded for claims filed on or after March 27, 2017, but was in effect at the time of the ALJ's decision. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01 (Mar. 27, 2017).

hearing testimony provided by Mr. Gwin and Plaintiff's daughter, Nina White. Pl.'s Br. at

8 (citing R. 43-44 (testimony of Ms. White), 45-47 (testimony of Mr. Gwin), 306-13 (Mr.

Gwin's third-party function report (Ex. 6E))). Plaintiff primarily objects to the ALJ's

treatment of the function report, arguing that Mr. Gwin's statement provides information

about Plaintiff's activities of daily living, medication side effects, and functional

limitations that "directly contradicted" the RFC assessed by the ALJ. Pl.'s Br. at 7-8.

Plaintiff contends that the ALJ's decision to disregard Mr. Gwin's third-party statement

and to fail to identify what weight he afforded either to this statement or to the hearing

testimony of Mr. Gwin and Ms. White was "completely inadequate and improper" and

requires that the Court remand this case for a proper credibility analysis. *Id.* at 9.

As a preliminary matter, Plaintiff's claim that the ALJ "completely ignored" Mr.

Gwin's third-party function report is not accurate. At step three of the sequential evaluation

process, the ALJ discussed the contents of Mr. Gwin's report when evaluating Plaintiff's

ability to function socially and ability to maintain concentration, persistence, and pace. *See*

R. 14. In evaluating Plaintiff's social functioning, the ALJ indicated that he found the

statements of Plaintiff and Mr. Gwin to be consistent with the medical record and the

opinions of the state-agency psychological consultants. R. 14. When assessing Plaintiff's

ability to maintain concentration, persistence, and pace, the ALJ found that the limitations

claimed by Plaintiff and Mr. Gwin were not supported by a review of the evidence

conducted by the same state-agency consultants. R. 14.

Plaintiff is correct that in evaluating the statements and testimony of Mr. Gwin and

Ms. White, the ALJ did not specify the precise weight given to them, for example by using

terms such as "great weight," "some weight," or "little weight," as is typical in disability-benefits decisions. But a failure to assign a specific weight to evidence does not necessarily constitute reversible error, even when that evidence is an opinion rendered by an acceptable medical source and not, as here, a statement provided by a nonmedical source. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (finding that the ALJ's failure to expressly assign a specific weight to a consultative examiner's opinion was harmless where the opinion was generally consistent with the ALJ's RFC findings). The language of Social Security Ruling 06-3p is clear that while evidence from nonmedical sources can provide insight into the severity of a claimant's impairment and how that impairment affects the individual's ability to function, an ALJ's evaluation of such evidence depends on the facts in each case and will ultimately be based upon consideration of "factors that tend to support or refute the evidence," rather than the weighing of factors prescribed by the regulations. SSR 06-3p, 2006 WL 2329939, at *5; *accord Nichols v. Astrue*, 341 F. App'x 450, 453 (10th Cir. 2009) (noting that consideration of the factors presented in 20 C.F.R. §§ 404.1527(c) and 416.927(c) is required only for evaluation of "medical opinions"). As such, SSA regulations direct that statements from a claimant's personal acquaintances are subject to a different inquiry than are opinions provided by treating physicians, consultative examiners, or other acceptable and nonacceptable medical sources. *See* SSR 06-3p, 2006 WL 2329939, at *2-6.

The dispositive question in this case is whether the ALJ erred in his consideration of functional limitations claimed by the third-party statement and the cited hearing testimony. *Cf. Madrid v. Astrue*, 243 F. App'x 387, 392 (10th Cir. 2007) ("[A] diagnosis

6

of a condition does not establish disability. The question is whether a person's impairment significantly limits his ability to engage in substantial gainful activity."). Plaintiff cites several such claims contained in Mr. Gwin's statement of January 2015. Plaintiff argues that the limitations attested to by Mr. Gwin in his report reflect "much more severe functional impairments" than those included in the RFC. *See* Pl.'s Br. at 8. Specifically, Plaintiff cites Mr. Gwin's statements concerning the side effects of Plaintiff's medications, her migraines, the numbness in her hands and burning in her shoulder, the difficulties Plaintiff had performing her household chores, and Plaintiff's difficulties following instructions and paying attention. *See id.* at 7-8; R. 306-13. Plaintiff specifically argues that while the ALJ considered testimony related to Plaintiff's migraines, he did not consider the "separate and distinct" contention in Mr. Gwin's third-party statement that Plaintiff's migraine headaches would render her unable to work for two or three days due to the side effects of Plaintiff's migraine medication. Pl.'s Reply (Doc. No. 26) at 3.

Defendant contends that the statements contained in Mr. Gwin's report were "merely cumulative" of other testimony, such that "any potential error in failing to separately address this report in more detail was harmless." *See* Def.'s Br. (Doc. No. 25) at 11 (citing *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009); *see, e.g.*, *Best-Willie v. Colvin,* 514 F. App'x 728, 736 (10th Cir. 2013) (finding that ALJ's failure to discuss letter from claimant's husband was harmless error where the letter was cumulative of claimant's testimony, which the ALJ discussed and found not credible); *Smith v. Colvin,* No. CIV-13-144-R, 2014 WL 50835, at *1 (W.D. Okla. Jan. 7, 2014) (finding no basis for remand where ALJ failed to indicate he specifically considered claimant's son's and friend's

statements but that evidence was "largely cumulative" of claimant's own testimony and ALJ stated that he had considered the entire record). Defendant also contends that the ALJ actually did address the limitations attested to by Mr. Gwin in his third-party statement, and that testimony concerning many, if not all, these limitations was offered by Plaintiff, Mr. Gwin, and Plaintiff's daughter during the hearing. *See* Def.'s Br. at 12-14.

In the text of the hearing decision, the ALJ stated that he had considered the entire record. R. 10, 12, 15; *see Smith*, 2014 WL 50835, at *1. The ALJ expressly considered the hearing testimony of both Mr. Gwin and Plaintiff's daughter concerning Plaintiff's functional limitations. R. 15-16. In evaluating their testimony, the ALJ stated that

> The claimant's daughter Nina [W]hite testified that she sees her mother daily although she does not live with her. She stated that her mother has migraine headaches and is forced to rest in a quiet place. She stated that she'd see her mother perform household tasks although she had to stop and rest periodically. The claimant's boyfriend Randy [Gwin] also testified that he had seen the claimant have problems with her neck and suffered from migraines 2 to 3 days [a] week. He stated that the claimant had problems doing dishes because she takes so many breaks. He stated that he performs most of the cooking on or after [he] starts or stops his daily job and goes by her . . . house. The witness also stated that the claimant occasionally passes out in the bathroom living room for unknown reasons. She is not receiv[ing] medications for the seizure or blackout activity.

R. 15-16. The ALJ's summary is consistent with the hearing testimony of Mr. Gwin and Ms. White. *See* R. 45-47. While the ALJ did not provide a separate evaluation of Mr. Gwin's third-party statement, he did address the functional limitations contained in this report in the context of evaluating the hearing testimony of Plaintiff, Plaintiff's daughter, and Mr. Gwin. And contrary to Plaintiff's contentions, the ALJ did address the effects of

Plaintiff's migraines, her need to take frequent breaks, the side effects of Plaintiff's medication, and the limitations caused by her mental impairments. R. 13-16.

In comparing Plaintiff's allegations with the record, the ALJ found that Plaintiff retained the ability to perform many activities of daily living but restricted her to light work in consideration of her cervical impairment. R. 17. With respect to Plaintiff's allegations concerning her fatigue, the ALJ found that Plaintiff did have a "certain amount of fatigue" and would require breaks throughout the day when performing exertional activity. R. 17. The ALJ further found that Plaintiff's medications had been "relatively effective" in controlling Plaintiff's symptoms, and that these medications had caused no "significantly limiting" side effects." R. 17. In evaluating Plaintiff's allegations concerning her mental limitations, the ALJ found these inconsistent with the results of a February 2015 consultative examination performed by Robert Danaher, PsyD, concluding that while attention and concentration were identified as issues by Dr. Danaher, the examiner "did not conclude that the deficits would interfere with daily activity." R. 16-17. The ALJ further concluded that Plaintiff had not sought mental health treatment for anxiety or depression and that the record revealed "very few signs or symptoms that would interfere with sustained activity." R. 17-18.

The record thus demonstrates that the ALJ considered the testimony offered by Plaintiff, Plaintiff's daughter, and Mr. Gwin, and properly compared that testimony against the objective evidence in formulating Plaintiff's RFC. In so doing, the ALJ did not offer a detailed, specific evaluation of Mr. Gwin's third-party report, but he did address the substance of the allegations contained in that report.

The ALJ was not required to set forth a point-by-point weighing or refutation of these nonmedical statements. *See* SSR 06-3p, 2006 WL 2329939, at *4, *6. And the record demonstrates that the ALJ considered the relevant evidence in the record as required. *See id.*; *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996). As such, the ALJ's decision reflects no reversible legal error, harmless or otherwise, and no lack of substantial evidence, and the Commissioner's decision is affirmed.

## CONCLUSION

The decision of the Commissioner is affirmed. A separate judgment shall be entered.

ENTERED this 25th day of February, 2019.

_____
CHARLES B. GOODWIN
United States District Judge